## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF LOUISIANA

IN RE:

**KOLOGIK, LLC, ET AL.**[1]                          **CASE NO. 24-10311**
      **DEBTORS**                          **CHAPTER 11**
                                             **(JOINT ADMINISTRATION)**


**JACKSON SMITH THOMAS**
      **PLAINTIFF**


**V.**                                        **ADVERSARY NO. 24-01019**


**KOLOGIK, LLC**
**MISSISSIPPI RIVER BANK**
**MERCHANTS & MARINE BANCORP, INC.**
      **DEFENDANTS**

### MEMORANDUM OPINION

Hearings on the following matters came before the court on March 26, 2025:[2]

1) Motion for Partial Summary Judgment[3] filed by Jackson Smith Thomas ("Thomas"),

    seeking summary judgment that:

      a)  Kologik, LLC ("Kologik") owed Thomas $397,352 as of January 30, 2020, according to the understanding of both parties, and as partially reflected in a certain Non-Recourse Promissory Note executed by Kologik in November 2018 ("Note");

      b) The Note was modified by a compromise evidenced by a series of emails on April 12, 2022, to reflect the understanding of the parties that a 15% rate of interest accrued on Thomas's principal during the pendency of a directors and officers ("D&O") liability litigation that was managed by the bankruptcy trustee for debtor COPsync, Inc. ("COPSync");

---

[1] The debtors and debtors-in-possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: ResolveKo, LLC (formerly Kologik, LLC) (3729), Case No. 24-10311; ResolveKo Capital LLC (formerly Kologik Capital, LLC) (3729) Case No. 24-10312; and ResolveKo., Ste. #1600, Baton Rouge, LA, 70801.

[2] The court also took up a Motion for Summary Judgment filed by Mississippi River Bank and Merchants & Marine Bancorp, Inc. on March 26, 2025 (P-43).  That motion was granted and judgment has been rendered dismissing the complaint as to these two defendants (P-78).

[3] P-40.

c) Thomas has recourse on his Note up to $1,239,807;

d) Thomas seized $1.3 million worth of accounts receivable in his pre-petition attachment proceedings; and

e) Thomas is permitted recourse against the assets of the estate on his Note pursuant to 11 U.S.C. §1111(b)(1)(A).

Objections to Thomas's motion were filed by Kologik[4] and Mississippi River Bank ("MRB") and Merchants & Marine Bancorp, Inc. (MMB") (collectively, "Banks"), [5] and Thomas filed a reply.[6]

2) Motion for Partial Summary Judgment[7] filed by Kologik, seeking summary judgment that:

a) the terms of the Note control the parties' obligations under Thomas's loan, and the amount due to him through the petition date is $150,686;

b) the Note is not an "open account" and therefore, no attorneys' fees and costs are due on it;

c) the loan Thomas made for payroll is not an open account and therefore, no attorneys' fees and costs are due on it either;

d) the Writ of Attachment should be dissolved and avoided; and

e) Kologik is entitled to damages for the wrongful issuance of the Writ of Attachment measured by the reasonable attorneys' fees and costs associated with successfully dissolving and avoiding it.

Thomas filed an objection[8] to Kologik's motion.

---

[4] P-53.

[5] P-59.

[6] P-73.

[7] P-46.

[8] P-57.

3) Motion in Limine[9] filed by Kologik, seeking to exclude evidence of settlement negotiations.  Thomas filed an objection.[10]

At the conclusion of the hearings, the court took the matters under advisement.

## I.  Facts and Procedural History

As part of the confirmed plan in COPSync's bankruptcy case ("COPSync's Plan"),[11] Koligik loaned the COPSync's liquidation trust ("Liquidation Trust") funds to complete the confirmation process ("Plan Exit Financing") and was defined as the "Plan Exit Lender." According to paragraph 5.13 of COPSync's Plan, Kologik, as the Plan Exit Lender, was entitled to 11% of any recovery made from claims against directors and officers ("D&O Claims"), but only after a 40% contingency fee and expenses were paid to counsel who prosecuted those claims.

To fund the Plan Exit Financing, Kologik borrowed funds from Thomas and five others ("Private Lenders").  On November 18, 2018, Kologik borrowed $135,000 from Thomas. The Note[12] provides in pertinent part:

> FOR VALUE RECEIVED, [Kologik] promises to pay to the order of [Thomas] … of this [Note], the principal sum … together with other sums as provided herein. The principal sum shall …  not bear interest, other than as set forth below in event of default.
>
> Payments.  As consideration for the loan … Borrower shall pay to Lender the "Pro Rata Portion" of all funds received by Borrower attributable to the "D & O Claims" and the "Chapter 5 Claims" (as such terms are defined below).  Borrower shall make such payments immediately upon receipt of funds.  It is understood that total payments to Lender hereunder may exceed the principal amount of this Note.

---

[9] P-47.

[10] P-55.

[11] COPSync's Plan is Exhibit C to the Affidavit of Amelia Hurt [P-46-3].  It is also P-322 to Case no. 17-12625, United States Bankruptcy Court, Eastern District of Louisiana.

[12] P-40-6.

Pro Rata Portion.  This Note is issued to facilitate a loan of up to $865,000 made by Borrower to COPSync, Inc. and its liquidating trust in Bankruptcy case number 17-12625, US Bankruptcy Court for the Eastern District of Louisiana (the "COPSync Loan"). The Pro Rata Portion shall be determined by dividing the principal amount of this Note with the total principal amount of COPSync Loan.

D & O Claims and Chapter 5 Claims.  "D &O Claims" shall mean all causes of action of COPSync, Inc. or its liquidating trust against current or former officers and directors and any direct-action claim against any insurer thereof.  "Chapter 5 Claims" shall mean all claims of COPSync, Inc or its liquidating trust arising in or related to Chapter 5 of the Bankruptcy Code.

Non-Recourse Obligations.  Notwithstanding anything to the contrary stated herein, Lender agrees that for payment of this Note it will look solely to the funds received by Borrower attributable to the D & O Claims and the Chapter 5 Claims, and no other assets of Borrower shall be subject to levy, execution or other enforcement procedure for the satisfaction of the remedies of Lender, or for any payment required to be made under this Note. …

Default Rate of Interest.  If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full.  The fixed default interest rate shall be equal to 18% per annum.

Attorneys Fees. In the event that any payment of any principal or interest due hereunder shall not be paid when due, whether by reason of acceleration or otherwise, and this Note is placed in the hands of an attorney or attorneys for collection, or the enforcement against other collateral, securing payment hereof, Borrower promises to pay, in addition to all other amounts otherwise due hereon, the costs and expenses of such collection, foreclosure and representation, including without limitation, reasonable attorneys' fees and expenses (whether or not litigation shall be commenced in aid thereof).  …

In May 2019, Kologik borrowed another $100,000 from Thomas. Although the second loan was not memorialized in a separate promissory note, Thomas and Kologik agree that the same terms apply to that loan as in the September 18, 2018, Note.  Thomas also made a separate loan of $41,500 to Kologik for payroll ("Payroll Loan").[13]  The Payroll Loan was not reduced to a writing.

---

[13] At the hearing on March 26, 2025, Kologik's counsel represented that it did not dispute the $41,500 loan.

Thomas loaned $235,000 of the total $753,000 borrowed by Kologik from the Private Lenders. Under the terms of the Note, Thomas's pro rata portion of the amount Kologik received for D&O and Chapter 5 Claims was 31.21%. These numbers are not in dispute.

In November 2019, COPSync's liquidation trustee, H. Kenneth Lefoldt, Jr. ("Liquidation Trustee"), reached a settlement of the D&O Claims in the amount of $3,750,000.[14] The settlement was approved by the bankruptcy court in New Orleans on December 2, 2019.[15]

On December 16, 2019, Kologik borrowed $800,000 from MRB. That same day, it sent a wire transfer for $800,020 to the Liquidation Trust, which included a $20 wire transfer fee, as consideration for the purchase of the stock redemption. According to the Liquidation Trustee's Declaration, the Liquidation Trust sent Kologik $827,306.58 on December 17, 2019, as repayment of the "Kologik - Note Payment."[16]

Kologik used the $827,306.58 to repay MRB the $800,000 it owed, plus $422.22 interest. In Kologik's Objection to Thomas's proof of claim, it treated the $27,306.58 received from the Liquidation Trust on December 17, 2019, as D&O proceeds.[17] While Kologik maintains that these funds were not actually D&O proceeds, it has agreed to include these funds in its calculation of what Thomas is due under the Note rather than incur the expense of litigating the issue.[18]

---

[14] The Liquidation Trustee's motion to approve the settlement is Exh. D to Thomas' Motion, P-40.

[15] The Order approving the settlement is Exh. E to Thomas' Motion, P-40.

[16] P-53-2, Exh. A.

[17] Case no. 24-10311, P-222, ¶ 21.

[18] P-46, p. 9.

On January 9, 2020, Kologik received $412,500 from the Liquidation Trust for its undisputed 11% share of the recovery on the D&O Claims as the Plan Exit Lender. Kologik made a $25,000 payment to Thomas in January 2020. Kologik also overpaid three of the Private Lenders from the D&O proceeds and then ran out of funds before paying Thomas in full.

Thomas and Kologik agree that the default interest rate of 18% was triggered when Kologik failed to pay the full amount owed after Kologik received proceeds from the D&O Claims in January 2020.[19] Specifically, Thomas seeks default interest of 18% from February 1, 2020, until April 23, 2024, the date Kologik filed its bankruptcy petition.[20]

Kologik paid Thomas $48,000 from April through December 2022 with eight payments of $6,000 each. In June 2023, Thomas commenced a suit against Kologik in state court.[21] On June 15, 2023, Thomas obtained an order directing that a Writ of Sequestration be issued to MRB ("Writ").[22] For a more detailed review of the facts and procedural history concerning the Writ, please refer to this court's Memorandum Opinion rendered on March 28, 2025.[23] For present purposes, the Minute Entry from the state court hearing on July 13, 2023, is relevant for the proposition that Kologik was represented by counsel (Jack Whitehead) at the hearing. It provides:

> This matter came before the Court for a hearing. Present in Court was Heather A. Cross and Thomas M. McEachin on behalf of plaintiff. Present for defendant was Jack K. Whitehead Jr. The matter was argued by counsels and submitted to the Court. Whereupon, the Court moots petition for nullity and motion for suspensive appeal. The Court will consider the motion for consolidation. Plaintiff's counsel is

---

[19] Thomas' Memo in Support, P-40-1, p. 2; Kologik's Motion, P-46, p. 6.

[20] Thomas' Memo in Support, P-40-1, p. 3.

[21] Case no. 733437, 19th Judicial District Court, Parish of East Baton Rouge.

[22] P-40, Exh. J.

[23] P-77.

to prepare an order with today's oral ruling and submit to the Court for signature within 10 days.[24]

Kologik filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 23, 2024.[25] Thomas filed an unsecured claim for $837,412.[26] Thomas also filed this adversary proceeding against MRB, MMB, and Kologik on June 27, 2024. The court entered an order on November 18, 2024, consolidating Kologik's objection to Thomas's claim with this adversary proceeding.[27] All parties have stipulated that they consent to this court's entry of a final judgment on non-core claims.[28]

On motion of Kologik, the court ordered that evidence attached to its Objection to Thomas's Motion for Partial Summary Judgment shall properly be considered as evidence for Kologik's Motion as well.[29]

On March 28, 2025, this court granted the Motion for Summary Judgment of MRB and MMB, dismissing Thomas's complaint against them.[30]

## II.  Summary Judgment Standard

F.R.B.P. 7056 makes F.R.C.P. 56 applicable in adversary proceedings, so jurisprudence construing Rule 56 is equally applicable to motions under F.R.B.P. 7056. The Fifth Circuit held

---

[24] P-43, Exh. 1E.  In this court's Memorandum Opinion granting the Motion for Summary Judgment of MRB and MMB, the court incorrectly assumed and stated that counsel for MRB attended the state court hearing on July 13, 2023. P-77.  Instead, Mr. Whitehead represented Kologik at that hearing.  The prior ruling did not depend on that erroneous assumption.

[25] Case no. 24-10311.

[26] Case no. 24-10311, Proof of Claim 21.

[27] Case no. 24-10311, P-281.

[28] P-19.

[29] P-68.

[30] P-78.

in *Pena v. Gonzalez,*[31] that "[s]ummary judgment is proper where 'competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'"[32]  This court is therefore tasked with deciding what, if anything, should be tried.

### III. Thomas's Motion for Partial Summary Judgment

#### A.  Was the Note Modified?

Thomas seeks summary judgment that "[t]he Note was modified by valid written compromise on April 12, 2022, to reflect the understanding of the parties that a 15% rate of interest accrued on Thomas's principal during the pendency of [the D&O] litigation."[33]  This prayer for relief is based on two contentions by Thomas: 1) that the Note provides that Kologik repay Thomas the $235,000 principal <u>in addition to</u> his 31.21% pro rata portion of Kologik's D&O proceeds, and 2) that Thomas and Kologik reached a settlement on April 12, 2022, that modified the pre-default interest rate provided in the Note. Kologik disputes both contentions.

##### 1. Is Thomas Entitled to Principal and a Pro-Rata Portion of D&O Proceeds?

Thomas alleges the Note entitles him to recover $235,000 as well as a pro rata portion of the D&O proceeds.  The Note provides that it "shall be governed and construed in accordance with the laws of the State of Louisiana."[34]  In *Lehman v. Benasco,*[35] the court held that "[a]

---

[31] *Pena v. Gonzalez,* No. 24-20163, 2025 WL 789548, at *1 (5th Cir. Mar. 12, 2025).

[32] *Id*. at *1 (citing *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442-43 (5th Cir. 2009)).

[33] P-40, p. 2

[34] P-40, Exh. B.

[35] *Lehman v. Benasco*, 2023-0694 (La. App. 1 Cir. 2/8/24), 384 So. 3d 366.

promissory note is a contract between the parties and is to be enforced according to its terms."[36]
La. C.C. art. 2046 provides that "[w]hen the words of a contract are clear and explicit and lead to
no absurd consequences, no further interpretation may be made in search of the parties' intent."
Thomas points to the first sentence of the Note, which provides:

> FOR VALUE RECEIVED, [Kologik] promises to pay to the order of [Thomas] …
> of this [Note], the principal sum … together with other sums as provided herein…

The court cannot interpret this sentence in isolation.  La. C.C. art. 2050 provides that "[e]ach
provision in a contract must be interpreted in light of the other provisions so that each is given
the meaning suggested by the contract as a whole."  A provision in the Note entitled "Payments"
unambiguously explains precisely how Thomas is to be repaid:

> Payments.  As consideration for the loan … Borrower shall pay to Lender the
> "Pro Rata Portion" of all funds received by Borrower attributable to the "D & O
> Claims" and the "Chapter 5 Claims" (as such terms are defined below).  Borrower
> shall make such payments immediately upon receipt of funds.  It is understood
> that total payments to Lender hereunder may exceed the principal amount of this
> Note.

Kologik argues that a plain reading of the Note limits Thomas's recovery to proceeds
obtained from D&O and Chapter 5 Claims.  This court agrees.  Specifically, he is entitled to his
pro rata portion of the recovery attributable to Kologik's percentage of those claims.  Thomas's
motion for partial summary judgment is denied on this issue.

### 2. Interest

The Note is clear that it bears no interest until default.[37]  Thomas alleges that the Note
was modified to provide for a 15% interest rate before default based on a settlement evidenced

---

[36] *Id*. at 370 (citing *Spillman v. Spillman*, 509 So.2d 442, 443 (La. App. 1 Cir.), *writ denied*, 513 So.2d 1207 (La. 1987)).

[37] P-40-6.

by emails back and forth on April 12, 2022, and a series of $6,000 payments made to him thereafter.  The email chain dated April 12, 2022, was between Terri Jones, the controller of Kologik, and Thomas. Thomas contends this email chain is definitive evidence of offer and acceptance sufficient to confect a binding settlement.[38] The court disagrees.  As pointed out by Kologik, Ms. Jones' email to Thomas provides that the debt schedule attached "will serve as the source of truth, pending any audit adjustments/reconciliations."[39]  In this court's view, Ms. Jones' qualifying language shows that the debt schedule was not finalized, and Thomas submitted no evidence that it was ever finalized or what the terms of repayment would be.  No evidence was submitted by Thomas indicating Kologik agreed to a 15% pre-default interest rate.  Further, the court rejects the notion that the monthly $6,000 payments evidence a meeting of the minds. Indeed, no one disputes that Kologik owed Thomas money, so the payments, without more, are more reflective of that reality than evidence of a settlement.  The court is not persuaded the parties ever reached a settlement and therefore will enter judgment denying summary judgment with respect to whether a settlement was reached.

### B. Amount Due

Thomas seeks summary judgment that Kologik owed him $397,352 as of January 30, 2020.  That amount depends entirely on a favorable ruling that the parties reached a settlement in 2022.  As evidence, Thomas attached an email dated April 12, 2022, from himself to employees of Kologik with an attached spreadsheet, purportedly created by Kologik.[40]  Kologik contends that this email was part of the same settlement negotiations on April 12, 2022, in which no

---

[38] P-40, Exh. H.

[39] Id. at p. 1.

[40] P-40, Exh. G.

agreement was reached. An examination of the emails shows that they are, at best, part of the same settlement negotiations. Again, the court has already denied summary judgment in favor of Thomas on the issue of whether a settlement was reached. Accordingly, Thomas's Motion for Partial Summary Judgment is denied as to this issue as well.

### C. What is Thomas's Recourse under the Note?

Thomas also contends he has recourse on the Note up to $1,239,807. With respect to recourse, the Note provides:

> Non-Recourse Obligations.  Notwithstanding anything to the contrary stated herein, Lender agrees that for payment of this Note it will look **solely** to the funds received by Borrower attributable to the D & O Claims and the Chapter 5 Claims, and no other assets of Borrower shall be subject to levy, execution or other enforcement procedure for the satisfaction of the remedies of Lender, or for any payment required to be made under this Note. …[41]

This provision leaves no doubt that Thomas only has recourse against "the funds received by [Kologik] attributable to the D&O Claims and the Chapter 5 Claims."  It is undisputed that no funds were received by Koligik for Chapter 5 Claims.  That leaves this court to determine what amount received by Kologik from the Liquidating Trust was "attributable to the D&O Claims." The parties agree that the $412,500 Kologik received on January 9, 2020, was attributable to the D&O Claims.[42]  But Thomas also contends that the $827,306.58 Kologik received on December 17, 2019, is attributable to the D&O Claims as well.  This is based on his belief (or hope rather) that the $827,306.58 was paid from funds received by the Liquidation Trust from the D&O settlement.  Thomas submitted no evidence demonstrating that any portion of the settlement proceeds were used to make this payment to Kologik.

---

[41] P-40, Exh. B (emphasis added).

[42] The $412,500 is 11% of the $3,750,000 D&O settlement that Kologik was entitled to under COPSync's Plan.

Conversely, Kologik submitted the declaration[43] of Ken Lefoldt, Liquidation Trustee, showing that the Liquidation Trust received the following payments on the dates indicated in settlement of the D&O Claims:

| Entity | Date | Amount |
| --- | --- | --- |
| HCC Service Co. D&O | 12/18/2019 | $100,000 |
| XL-Specialty | 12/31/2019 | $1,800,000 |
| Chubb | 1/2/2020 | $1,825,000 |
| Fishman Haygood | 1/3/2020 | $25,000 |

The Liquidation Trustee attached to his declaration "a true and correct copy of [his] records," showing that on December 17, 2019, or the day <u>before</u> the first payment of settlement proceeds was received, he wrote check no. 1016 to Kologik in the amount of $827,306.58.  On that date, the Liquidation Trust's account, as reflected in the attachment to the Declaration, had sufficient funds to pay that amount.[44]  Based on the Liquidation Trustee's declaration and the exhibit thereto, together with Thomas's failure to submit any evidence to the contrary, Thomas's motion for partial summary judgment on this issue is denied as well.

### D. Seizure

Thomas also seeks a judgment that he seized $1,300,000 of accounts receivable in the state court attachment proceedings. For the reasons set forth in this court's Memorandum Opinion[45] granting MRB's Motion for Summary Judgment, a seizure of Kologik's accounts receivable was undeniably subject to the priming security interest of MRB.  Even if the seizure were valid, it would not have resulted in any recovery for Thomas.  Kologik's accounts at MRB

---

[43] P-53-2.

[44] P-53-2, Exh. A.

[45] P-77.

are now closed, and the court has already dismissed Thomas's complaint against it and MMB. The court views this request for declaratory relief as potentially confusing and misleading, even if technically accurate (*i.e.*, there may have been a seizure of receivables, just not one that proved fruitful). Therefore, summary judgment is denied on this ground.

Thomas also alleges in his memorandum in support of its motion for partial summary judgment that MRB and Kologik conspired to avoid the Writ. Importantly for present purposes, no such allegations were made in the complaint. *In U.S. ex rel. DeKort v. Integrated Coast Guard Systems,*[46] the Fifth Circuit ruled:

> [T]he district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim, not asserted in his fifth amended complaint. *See Fisher v. Metro. Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir.1990); *see also Corey Airport Servs., Inc. v. Decosta,* 587 F.3d 1280, 1282 n. 2 (11th Cir.2009) ("[Plaintiff] cannot amend its complaint by adding a new claim beyond its summary judgment papers...."); *Gilmour v. Gates, McDonald and Co.,* 382 F.3d 1312, 1314–15 (11th Cir.2004) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints.... This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.... At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).").

Any claim for conspiracy damages now represents an improper expansion of the pleadings, as the complaint does not state a cause of action for conspiracy. Further, the court notes that the discovery cutoff in this case was February 28, 2025, and trial is scheduled to begin on April 15, 2025.[47] Thomas had ample opportunity to amend the complaint to allege conspiracy and failed to do so. It is far too late now. Accordingly, summary judgment is denied on any claim of conspiracy.

---

[46] *In U.S. ex rel. DeKort v. Integrated Coast Guard Systems,* 475 F. App'x 521 (5th Cir. 2012).

[47] Order dated November 26, 2024 (P-24).

### E.  Section 1111(b) of the Bankruptcy Code

Similarly, Thomas seeks summary judgment that 11 U.S.C. § 1111(b)(1)(A) permits him to claim recourse status against the assets of Kologik's estate.  The court is at a loss as to what Thomas is trying to achieve with this argument.  Any attempt after the filing of bankruptcy to go back in time armed with newfound *in personam* rights and, with it, presumably, justification for a seizure of assets beyond the limits of the remedies set forth in the Note, is rejected.  Regardless, Thomas did not plead this in the complaint.  As such, seeking it now on summary judgment is an improper expansion of the complaint according the Fifth Circuit's ruling in *U.S. ex rel. DeKort v. Integrated Coast Guard Systems*.[48]  And for the same reasons detailed in the conspiracy count, it is too late for Thomas to amend his complaint.  Accordingly, the court will deny summary judgment on this issue.

### F.  Conclusion

Thomas's Motion for Partial Summary Judgment is denied in its entirety.  Pursuant to the Note, Thomas is only entitled to receive his pro rata share of Kologik's recovery attributable to the D&O Claims. Thomas has not proved that he is entitled to a percentage recovery on the $800,000 paid by the Liquidation Trustee on December 17, 2019.  Thomas has not proved that a settlement was reached sufficient to support modifying the Note to include pre-default interest of 15%.  And finally, Thomas may not expand the pleadings in an attempt to recover funds for conspiracy or to make out some kind of claim pursuant to 11 U.S.C. § 1111(b)(1)(A), nor can he

---

[48] *In U.S. ex rel. DeKort v. Integrated Coast Guard Systems,* 475 F. App'x 521 (5th Cir. 2012).

amend his complaint at this late stage of the litigation.  The court will enter a separate judgment in accordance with this ruling.

## IV.  Kologik's Motion for Partial Summary Judgment

### A. The Note Controls

Kologik seeks summary judgment that the terms of the Note control the parties' obligations for the repayment of the $235,000 loan.  It contends that through the date of the bankruptcy petition that total is $150,686.00.  That contention necessarily includes the underlying theory that the $827,306.58 received was not attributable to the D&O Claims.  To that end, Koligik offered the Declaration and attachment thereto executed by the Liquidation Trustee. The summary judgment evidence establishes that the Liquidation Trust did not receive any proceeds attributable to the settlement of the D&O Claims until after the $827,306.58 had been paid to Kologik. Thomas did not present any evidence to the contrary.  The court will grant summary judgment in favor of Kologik, finding that the following amounts are attributable to the D&O Claims:

| | |
|---|---|
| $412,500.00 | Received January 9, 2020 |
| $27,306.58[49] | Received December 17, 2019 |
| $439,806.58 | TOTAL |
| | |

However, for reasons set forth below, the court will not grant summary judgment limiting Thomas's claim to $150,686.00.

---

[49] In Kologik's Objection to Thomas proof of claim, Kologik treated as D&O proceeds the $27,306.58 it received from the Liquidation Trust on December 17, 2019.  Case No. 24-10311, P-222, ¶ 21.  At the hearing, counsel for Kologik clarified that they still contend this amount was not attributable to D&O proceeds but continuing the fight over that amount was not worth the trouble.

### B.  Open Account and Attorneys' Fees

Kologik also seeks summary judgment declaring the amount due on the Note is not an "open account" under Louisiana law and thus Thomas may not seek reasonable attorneys' fees at trial.   In *Simmons v. Cornerstone Investments, LLC,*[50] the Louisiana Supreme Court held that "[i]t is ... well recognized in the jurisprudence of this state that as a general rule attorney fees are not allowed except when authorized by statute or contract."[51] Count One of Thomas's complaint alleges that Kologik's debt to Thomas represents an open account.  La. R.S. 9:2781 does not define what an open account is but case law certainly suggests that it applies to debts arising from services rendered or goods supplied.[52]  And in *Lehman v. Benasco,*[53] the court held that "[t]o construe 'open account' as used in La. R.S. 9:2781 to include the failure to pay a promissory note would violate the principle that statutes providing for attorney fees are penal in nature and must be strictly construed."[54]  It should be noted that the prescriptive period on a promissory note is five years (La. C.C. art. 3498) and a suit on an open account is three years (La. C.C. art. 3494), further evidence in this court's view that the two types of claims are inherently different.

While the court grants summary judgment in favor of Kologik that the Note is not an open account (and therefore attorneys' fees are unavailable under that statute), this ruling does not foreclose the possibility of Thomas maintaining a claim for reasonable attorneys' fees at trial

---

[50] *Simmons v. Cornerstone Invs., LLC*, 2018-0735 (La. 5/8/19), 282 So. 3d 199.

[51] *Id*. at 203 (quoting *Killebrew v. Abbott Laboratories*, 359 So.2d 1275, 1278 (La. 1978)).

[52] *Bridges v. Citifinancial Auto Corporation,* 18-0734 (La. App. 1 Cir. 11/5/18), 266 So.3d 939, 942.

[53] *Lehman v. Benasco*, 2023-0694 (La. App. 1 Cir. 2/8/24), 384 So. 3d 366.

[54] *Id*. at 370.

under the Note.  Indeed, the court has already ruled, at Kologik's urging, that the Note controls the obligations between Thomas and Kologik.  It would be intellectually inconsistent to parse out beneficial portions of the Note from those less so. The Note clearly provides that "Borrower promises to pay, …, the costs and expenses of such collection, foreclosure and representation, including without limitation, reasonable attorneys' fees and expenses."[55] This court is not going to penalize Thomas for pleading a claim for attorneys' fees under an inapplicable statute when the contract unequivocally provides for that claim. Similarly, the court expressly finds that seeking contractual attorneys' fees is not an expansion of the pleadings in the complaint. Thomas asked for attorneys' fees and the Note provides for that. The amount of that claim must be determined after a trial on the merits.  To the extent Kologik seeks summary judgment denying all attempts to establish a contractual claim for attorneys' fees, the motion is denied.

### C. The Payroll Loan

Kologik also seeks summary judgment that the $41,500 Payroll Loan made by Thomas to Kologik is not an open account, preventing any attempt to claim attorneys' fees for this distinct claim.  The key distinction here, of course, is that the Payroll Loan was not reduced to a promissory note.  As such, the only way Thomas can successfully maintain a separate award of attorneys' fees under the Payroll Loan is to shoehorn the claim under the open account statute contained in La. R.S.§ 9:2781.  Perhaps recognizing the futility of that claim,[56] Thomas waived

---

[55] P-40, Exh. B.

[56] La. C.C. art. 3494 lists a series of actions subject to a liberative prescriptive period of three years.  Subsection (3) is "[a]n action on money lent;" and subsection (4) is "[a]n action on an open account." An action on an undocumented loan almost assuredly would be characterized by courts as a suit on "money lent" rather than a suit on open account.   Had the legislature intended for actions on money lent and open account to be synonymous, it could have certainly dispensed with the delineation made in La. C.C. art. 3494.  Further, even assuming the Payroll Loan is an open account, Thomas was required, under the open account provisions, to send a written demand for payment within 30 days of the debt becoming due correctly setting forth the amount owed to be entitled to reasonable attorney fees.  The record contains no such evidence.

his right to attorneys' fees on the Payroll Loan in his Opposition to Kologik's Motion for Partial Summary Judgment.[57]   Thus, Kologik will be granted summary judgment on this issue.

Before moving on to Kologik's counterclaim, to determine the amount of Thomas's allowed claim, which is also set for trial on April 15, 2025, the parties must take into account all credits due for payments made and the rulings herein that clarify (1) no settlement was reached that would allow for a 15% pre-default interest rate on the Note, (2) the $800,000 paid to Kologik on December 17, 2019, was not attributable to the D&O recovery, (3) Kologik has voluntarily waived any right to judgment that the additional $27,306.58 of the funds received from the Liquidation Trust  were also not attributable to the D&O recovery, and (4) Thomas will be permitted to make a claim for contractual attorneys' fees at trial but not with respect to collection on the Payroll Loan.

### D.  The Writ

Kologik also seeks summary judgment on its counterclaim (1) to dissolve and nullify the Writ maintained after a hearing in state court, and (2) for money damages in dissolving the Writ as a wrongful seizure.  In turn, Kologik requests dismissal of Counts Two and Three of Thomas's complaint.  While it may be tempting to weigh in on the language in the Note expressly forbidding Thomas from attaching assets, a ruling on this issue has already been made in the state court proceeding.  Kologik was represented by counsel at the hearing.  As such, Kologik's requests to dissolve the Writ and award damages to it for wrongful seizure are beyond this court's jurisdiction. In *Weaver v. Texas Cap. Bank N.A.*,[58] the Fifth Circuit held:

> Under the Rooker–Feldman doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.,*

---

[57] P-57, footnote 1.

[58] *Weaver v. Texas Cap. Bank N.A.*, 660 F.3d 900 (5th Cir. 2011).

18 F.3d 315, 317 (5th Cir.1994). A state court judgment is attacked for purposes of Rooker–Feldman "when the [federal] claims are 'inextricably intertwined' with a challenged state court judgment," *Richard v. Hoechst Celanese Chem. Grp., Inc.,* 355 F.3d 345, 350 (5th Cir.2003), or where the losing party in a state court action seeks "what in substance would be appellate review of the state judgment." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994).[59]

The doctrine of *Rooker-Feldman* prevents this court from serving as an appellate court in deciding whether the state court Writ should be dissolved as a wrongful seizure. Stated another way, this court lacks jurisdiction to act upon Kologik's requests, as to do so would be an impermissible collateral attack on the state court ruling. For the same reasons, the court will deny summary judgment on Kologik's claim for damages for wrongful seizure. And finally, based on a lack of jurisdiction, the court will also dismiss Counts One, Two, and Three of Kologik's counterclaim, without prejudice to its rights to seek that relief in the state court proceeding.

### E. Conclusion

Kologik's Motion for Partial Summary Judgment is granted in part and denied in part. Kologik proved that no genuine issue of material fact is in dispute regarding whether a settlement was reached by the parties sufficient to modify the Note. Kologik, through the Declaration of the Liquidation Trustee, also established that Thomas is limited to his percentage recovery of the $412,500 received in January of 2020, together with the $27,306.58 received earlier that Kologik voluntarily waived rights to. While the Note is not an open account, the Note itself does provide for attorneys' fees if the matter is turned over for collection. This aspect of the motion for partial summary judgment is denied. A trial will be held to determine the

---

[59] *Id.* at 904.

amount of that claim.  And with respect to Kologik's request that attorneys' fees related to the

Payroll Loan be denied, especially considering the waiver to that claim by Thomas, summary

judgment is granted.  Finally, the *Rooker-Feldman* doctrine precludes this court from exercising

jurisdiction as to whether the Writ should be dissolved, as well as any claim for money damages

for wrongful seizure.  Summary judgment is denied on those issues and Counts One, Two, and

Three of Kologik's counterclaim are dismissed, without prejudice to Kologik's rights to seek

relief from a court of competent jurisdiction.  The court will enter a separate judgment in

accordance with this ruling.

## V. Kologik's Motion in Limine

Kologik seeks to exclude from trial all evidence of settlement negotiations pursuant to

F.R.E. 408.  F.R.E. 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The court has already denied Thomas's attempt to increase his claim through an alleged

settlement. The only issue left to be tried is Thomas's contractual right to reasonable attorneys'

fees as part of his overall unsecured claim in this bankruptcy.  At trial, the court will enforce

F.R.E. 408 and prohibit evidence of settlement negotiations "to prove or disprove the validity or

amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."

This limitation may apply, for example, if Thomas were to attempt to introduce evidence or

testimony at trial concerning settlement discussions related specifically to the amount of a

reasonable attorney fee award under the Note.  To the extent not mooted by the rulings herein,

the Motion in Limine is granted. The court will enter a separate order in accordance with this

ruling.

Baton Rouge, Louisiana, April 3, 2025.

**/s/ Michael A. Crawford**
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE